RECEIVED
IN ALEXANDRIA, LA
FEB 9 2009
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| HARDY ANDERSON,<br>    Plaintiff | CIVIL ACTION<br>NO. CV05-0932-A |
| VERSUS | |
| TIM WILKERSON,[1]<br>    Defendant | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

## SUPPLEMENTAL REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Hardy Anderson ("Anderson") on May 27, 2007. The only named defendant is Tim Wilkinson ("Wilkinson"), warden of the Winn Correctional Center ("WCC") in Winnfield, Louisiana. Anderson contends that, while he was confined at WCC in May 2004, Wilkinson knowingly understaffed the dorms and promulgated or implemented constitutionally deficient security policies or practices, resulting in injury to Anderson from an attack by another inmate at night in his dorm.

Wilkinson answered the complaint and filed a motion for summary judgment, which is now before the court for disposition.

### Law and Analysis

#### The Law of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that

---

[1] Anderson misspelled Warden Wilkinson's name as "Wilkerson," which appears in the caption of this case. The defendant shall be correctly referred to as "Wilkinson" in this report and recommendation.

a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable

a reasonable jury to return a verdict in her favor." Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 178 (5th Cir. 1990) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. See Celotex, 477 U.S. at 325, 106 S.Ct. 2548. See also Lavespere, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See Celotex, 477 U.S. at 324, 106 S.Ct. 2548. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. See id. at 325, 106 S.Ct. 2548; Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994); Austin v. Will-Burt Company, 361 F.3d 862, (5th Cir. 2004). This burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. Little, 37 F.3d at 1075.

All evidence must be considered, but the court does not make credibility determinations. If the movant fails to meet its

initial burden, summary judgment should be denied. <u>Little</u>, 37 F.3d at 1075.

Failure to Protect

In his complaint (Doc. 1), Anderson contends Warden Wilkinson understaffed security in the dorms at WCC in May 2004. Anderson contends that, as a result of the lack of security, an inmate threw boiling water in Anderson's face while he was asleep in his bunk and then tried to stab Anderson. Anderson contends the lack of security and monitoring in the dorms made the attack on him possible, and alleges Warden Wilkinson knowingly understaffed and provided inadequate security in the dorms at WCC.

The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates. <u>Farmer v. Brennan</u>, 511 U.S. 825, 114 S.Ct. 1970, 1977 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Being violently assaulted in prison is simply not a part of the penalty that criminal offenders pay for their offenses against society. <u>Farmer</u>, 114 S.Ct. at 1976-77.

For an inmate to succeed on a claim based on a failure to prevent harm, he must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) the

4

prison official was "deliberately indifferent" to his health or safety. Failing to act with deliberate indifference to a substantial risk of harm is the equivalent of recklessly disregarding that risk. Farmer, 114 S.Ct. at 1978. Deliberate indifference is a subjective test and it must be shown that the official actually knew of the risk of harm to the inmate. It is insufficient to show solely that the official should have known of the risk. The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference. Farmer, 114 S.Ct. at 1979.

Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. A fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. It remains open to an official to prove that he was unaware even of an obvious risk to inmate health and safety. Farmer, 114 S.Ct. at 1981-82. Also, Hinojosa v. Johnson, 277 Fed.Appx. 370, 374 (5th Cir. 2008). However, a prison official who actually knew of a substantial risk to inmate health and safety may be found free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted. Farmer, 114 S.Ct. at 1982-83.

The failure of a prisoner to give any advance notice to prison

5

officials of potential danger to the prisoner's safety is not dispositive of the issue of the official's awareness, nor is advance notice of a substantial risk of assault posed by a particular fellow prisoner a prerequisite. <u>Farmer</u>, 114 S.Ct. at 1984-1985.

Anderson alleges Wilkinson's liability for his safety stems from the fact that Wilkinson failed to provide enough officers to monitor the dorms and failed to implement policies for properly monitoring and patrolling the dorms. Well settled §1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates' actions. Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injury. <u>Mouille v. City of Live Oak, Tex.</u>, 977 F.2d 924, 929 (5th Cir. 1992), <u>cert. den.</u>, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993); <u>Thompkins v. Belt</u>, 828 F.2d 298, 303 (5th Cir. 1987).

Knowledge of prison under-staffing and a decision not to increase the number of guards on duty may amount to deliberate indifference to the safety and well-being of the inmates, in violation of the Eighth Amendment. See <u>Edwards v. Gilbert</u>, 867 F.2d 1271 (11th Cir. 1989); <u>Anderson v. City of Atlanta</u>, 778 F.2d 678, 685 (11th Cir. 1985). Under-staffing of correctional officers

6

increases the risk of inmate on inmate violence. To prevail, a plaintiff must plead and prove there was a policy at the WCC, promulgated or implemented by Warden Wilkinson, of deliberate indifference to the risk of under-staffing and that this policy caused his injury. Greason v. Kemp, 891 F.2d 829, 838 (11th Cir. 1990); Westmoreland v. Brown, 883 F.Supp. 67, 76 (W.D.Va. 1995). Evidence of understaffing, without more, is not proof of official policy. Hood v. Itawamba, 819 F.Supp. 556, 566 (N.D. Miss. 1993); Gagne v. City of Galveston, 671 F.Supp. 1130, 1135 (S.D.Tex. 1987), aff'd, 851 F.2d 359 (5th Cir. 1988). Evidence of understaffing would become proof of an official policy only if more complete funding and staffing were possible and it was the deliberate intent of the policy-making official not to adequately fund and staff the jail. Gagne, 671 F.Supp. at 1135. When understaffing appears to have contributed to a violation of an inmate's Eighth Amendment rights, a causal link exists between that violation and the policy if officials are aware of the staffing problem but fail to take corrective action. Greason, 891 F.2d at 837 n.18, and cases cited therein.

In the statement of undisputed facts attached to his motion for summary judgment (Doc. 16), Wilkinson states that Anderson and the inmate who attacked him, Wells, had never had any prior confrontation, Anderson had never complained about Wells, and Anderson had never requested segregation due to safety concerns.

7

Wilkinson further states in his statement of undisputed facts that the incident between Anderson and Wells was an isolated incident of which Wilkinson had no warning or prior knowledge. Finally, Wilkinson states that, at the time of the incident, "there was proper supervision of the Ash Housing Unit in accordance with the policies and procedures of Winn Correctional Center," and that the "Correctional Officers on duty responded immediately and in accordance with policies and procedures of the prison." Wilkinson argues in his brief that, since he did not have any reason to believe Wells would attack Anderson, he was not deliberately indifferent to Anderson's safety.

Anderson has not alleged that Wilkinson had reason to know an attack on him by Wells was imminent and that he failed to prevent it. Instead, Anderson alleges deliberate understaffing and inadequate security policies and practices that make it easy for inmates to be able to attack other inmates in the dorms. Anderson alleges that, as warden, Wilkinson is in responsible for the staffing and policy decisions. Anderson contends Warden Wilkinson had actual knowledge that WCC was understaffed and that there was a risk of serious harm to the inmates due to understaffing.

Wilkinson also argues he cannot be liable in his supervisory capacity. However, as stated above, Anderson does not allege supervisory liability, but contends Wilkinson was responsible for understaffing WCC and providing inadequate security in the dorms,

and therefore is personally liable to Anderson.

Wilkinson argues that Anderson has not alleged or offered any proof of any acts of warden Wilkinson, or any unconstitutional policies implemented by Warden Wilkinson, which deprived Anderson of his constitutional rights. Wilkinson further contends that Anderson admits he had been warned by another inmate that he may be attacked if he fell asleep, and failed to report the threat to corrections officers.

In his brief (Doc. 25) and his affidavit (Doc. 18), Anderson contends that each dorm at WCC has 352 inmates and only two correctional officers (who were usually sleeping on the job), resulting in all of the dorm units having out-of-control inmates doing whatever they want. Anderson states that, on the night he was attacked, inmate Brown warned Anderson that he may be attacked if he went to sleep (Doc. 20). Anderson further states that, on the night of the attack, the two correctional officers in charge of the eight tiers in the Ash dorm did not walk the floor (Doc. 18). Anderson states in his affidavit (Doc. 18) that inmate Wells heated the water (that he threw on Anderson) in the microwave in front of the officers at 1:45 a.m., when the lights were off, in violation of DOC and WCC policy, and no one asked Wells what he was doing. Anderson states that, although the attack took place about thirty feet from the correctional officers, it was about ten minutes before the officers responded and broke up the fight (Doc. 18).

9

Finally, Anderson points out that, earlier that day, he and Wells had a fight for which prison officials called in a "code blue" to advise everyone of the fight; according to Anderson, Warden Wilkinson was on duty and acting as security that day, so he heard the code blue and was aware of the fight (Docs. 18, 25). Anderson contends that, after the afternoon fight, he and Wells were not separated or segregated by the prison officials, in violation of WCC policy.

Although Wilkinson contends he was unaware of animosity between Anderson and Wells, Anderson contends Wilkinson knew about the earlier fight. Also, Anderson alleges unconstitutional policies or practices which were implemented or promulgated by Wilkinson, as to failure to segregate or separate fighting inmates, understaffing, and inadequate dorm security, which Wilkinson has not addressed in his motion for summary judgment.

Therefore, there are genuine issues of material fact as to whether Wilkinson knew of the earlier fight between Anderson and Wells, and whether Wilkinson implemented or promulgated constitutionally deficient policies or practices, with regard to staffing and ensuring inmate safety, which preclude a summary judgment in this case. Wilkinson's motion for summary judgment should be denied.[2]

---

[2] It is noted there are at least two recent cases, Hamilton v. Wilkinson, 2007 WL 1695713 (W.D.La. May 16, 2007), No. CV05-1563, and Miles v. Wilkinson, 2007 WL 5023592 (W.D.La. November

10

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Wilkinson's motion for summary judgment be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

---

26, 2007), No. CV06-1079, involving failure to protect claims at WCC. In <u>Hamilton</u>, the plaintiff alleged that, in July 2005, WCC was understaffed and that, as a result, another inmate was able to throw disinfectant into the plaintiff's face and then stick a pencil into his right eye. In <u>Miles</u>, the plaintiff alleged that, in December 2005, due to understaffing, prison officials failed to protect him from being attacked and stabbed thirteen times by two other inmates. Both cases are currently awaiting trial on the failure to protect and understaffing claims.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 9th day of February, 2009.

                                                  JAMES D. KIRK
                                      UNITED STATES MAGISTRATE JUDGE